I will turn to the first case on our calendar 1199 SEIU versus Alaris and the atrium at Hamilton Park. Council. Good morning, your honors. This is David Jasinski on behalf of the respondents appellant. The law in this particular matter is very clear that with regards to civil contempt, sanctions must only be compensatory or coercive. They cannot, cannot be punitive. The district court in this proceeding, after three months of, in its initial order, finding that there was a vagueness and it was unclear, issued a second order and ultimately decided that attorney fee should be awarded and without referring to compensatory grounds under the premise that it took too long. And in that regard. Council, I'm sorry to interrupt, but he was very frustrated. The district court had your failure to produce the documents that opposing counsel requested. The, the, the issue your honor with regards to that is that this was a very complicated matter. It dealt with two employers, one that had a collective bargaining agreement and a bargaining relationship with the parties and the other that did not. And the, the, the problem that existed in this matter with how to comply with it. The initial proceeding started from an arbitration award and the arbitrator didn't even provide any particular guidance. I agree that the district court judge was frustrated, but I, but I can tell you that we were equally frustrated in terms of trying to comply with the, with the requested information and compliance with the order. The matter could have and should have been referred back to the arbitrator because the arbitrator is the one that truly had jurisdiction over this matter. And in the arbitration award didn't provide any guidance for us, how to comply with employees that worked for another employer to be covered under a collective bargaining agreement. And in this particular matter, and I do, I do believe that the district court did find that we, that we acted in good faith, that we, that we did indeed try to comply. And in fact, we did comply with it ultimately. So with regards to all of the facts in this case, your honor, coupled with the law that there is, it's our position that this is, this was not compensatory and the district court judge didn't find that. Counsel, I have a question. Sure. You were ultimately able to comply with the orders, correct? We were, yes, we complied. Okay. So you were ultimately able to comply. What prevented you from complying earlier? The issue your honor dealt with, these individuals were not employed by Hamilton Park Healthcare Center. They were employed by Atrium. And in our brief, we make reference to the issue that there were certain obligations that were required under the part of in its standard labor law that, and in the collective bargaining agreement says that they have to become union members. There was no issue with regard, there was no evidence that these individuals did indeed sign authorization cards and became union members. The district court judge mandated that we do it and we did it. Not that, and that is something that we believe. I'm sorry. I understand your issue about the two different corporate entities. My question is you were able to do it at a certain date. My question is what prevented you from doing it at an earlier date? I understand your objection about why you thought you shouldn't have to do it. My question is what prevented you from doing it earlier? We didn't believe that we would be complying with the law by doing it. So nothing prevented you from doing it. You just thought you ought not to do it. We believe the law mandated that we not be obligated to do it. Yes. And that the individuals, the individuals that there were certain rights with regards to the individuals as well. This is Judge Raggi. I too understand your point about the two employers, but it seems that the district court in its confirmation order ordered it, ordered the, that the CBA applied to the affected atrium employees. I mean, that is the express statement of the district court and it required documents. And so my, my question following up on Judge Nardini is why at that point in February were you not able to comply with the order? The issue, the issue from, from our perspective, the issue is that the judge exceeded his authority with regards. That's different. And you know that the law says that you can't just flout an order. You have to challenge it. So to the extent that you're disputing his ability to hold you in contempt, can you clarify for me what you think the error is in his holding you in contempt after February? Well, I think I would be repeating myself, Your Honor, with regards to that. The judge exceeded his authority with regards to mandating that the atrium employees be bound by the terms of the collective. Again, just help me out as to how that squares with precedent saying that you can't flout a court order. You have to challenge it, which doesn't seem to be what you did. Well, respectfully, Judge. I would think that I would think we're bound by that body of law. And so to the extent you're asking us to vacate the contempt citation, I need you to tell me how we would do that consistent with precedent. Well, I think that the vacating the contempt goes to the issue of the punitive nature of the order. All right. That's a different question altogether. And it seems again, just to follow up on this, that the district court viewed it as remedial for the injury rather than punitive. Now, why is that not a permissible way for us to look at it or an appropriate way to look at it? My apologies, Judge, because I don't believe that that was what the district court's order was. The district court relied on the fact saying that it took too long. And there's nothing inciting the cases that I believe that we responded to that appropriately and distinguish those particular cases. And even the case that the district court relied on, the Chambers case, that case is far afield to what happened in this particular proceeding. And in the Chambers case, which the district court relied on, the individual lied to the court, engaged in unethical and fraudulent behavior, and that there were multiple motions, frivolous motions that were filed. From a respondent's perspective, none of those facts are evident in this particular case. So at the end of the day, when you look at what the district court found and relied on, the facts do not support a finding here. It really falls under the category of punitive. There's nothing that's compensatory about it. There's nothing that is with regards to coercive. And remedial is something that has not been found in the district court's ruling. Can I ask you why it's not coercive when he jacked up the fines to what was it, $1,000 a day, all of a sudden he complied? Isn't that sort of the prototypical version of coercive? Well, with regards to the fines, Your Honor, I believe that that's a separate issue. With regards to what the court ultimately found with regards to the attorney's fees, there's no reference with regards to it being coercive. He specifically relied on that it took too long. And I think that the court also recognized that there was a vagueness here and that in this particular matter, he tried to find some reason for it. But to suggest that it took too long, there's nothing in the case law and there's nothing in the Second Circuit that would justify this other than finding that it's punitive based on the facts in this particular proceeding. Counsel, you have reserved three minutes for rebuttal. We'll hear from you. Thank you. Thank you. Good morning, Your Honor. This is Katherine Hanson representing the appellee 1199-SEIU. The district court in this case was very clear that the attorney's fees were being awarded as compensation for what the court described as the astonishing nine months it had to actively litigate in order to enforce the court's orders. It describes the efforts as extraordinary. It describes the employer's conduct as being recalcitrant and flagrant violations. The union had to participate in four contempt hearings, submitted at least eight detailed declarations, participate in numerous telephonic conferences, all in order to secure compliance with a very straightforward order. Part of the reason that contempt proceedings took so long is because the employer, far from arguing that it didn't know what it was supposed to do, it represented time and time again that it had, in fact, complied. This is after months and months and months and months of doing nothing. And it's undisputed that for many months, the employer neither saw to stay nor took a single step to comply with the award. I'm sorry, with the order. Once the contempt proceedings began and at each hearing, the employer represented that now they had complied. Oftentimes those representations were made on the day of the hearing without any evidence, and it proved each time that that was not true. And what the district court was very clear in its order, the awarding fees, was that it was compensating the union. And it, you know, uses exactly that language, that the fees were justified as compensatory for the efforts that the union had to put in. And there's no question the district court had the authority to do that. It's absolutely the case that the employers came into compliance, substantial compliance, nine months after the fact. At the May hearing, the witnesses that the court ordered the employers to bring stated what is obvious, that adjusting employees' rates of pay can be done in a single day. It's a keystroke. The employer paid these employees $10 an hour. They had to pay them $10.61. There's nothing complicated. There's nothing vague about that. The employers claimed that there's two different business entities. Not only is that not in any way a defense for their failure to comply for these disputes in the underlying arbitration, the arbitrator found that they were single employers, that the employees at issue are employed directly by the employers. That was enforced by the district court, and that was enforced by this court. And in this court's order confirming the award, it, you know, goes through the fact that there's common labor relations, that they're a single employer, centralized, integrated operations. It's a fiction that has been rejected time and time again. And there's no question in any event that these employers had the ability to correct these employees' rates of pay and make benefit fund payments on their behalf. And they did so once the court threatened them with escalating fines. They finally came into compliance. So this is Judge Pooler. Would you speak to the amount of the attorney's fees award compared to what was requested and what the fine would have been if they were penalized at that level? Yes. Thank you, Your Honor. The $5,000 in fines was imposed in connection with the court's September order. In connection with the court's August order, the court stated that it found that they were in substantial compliance, which was in May. Fines would have amounted to approximately $300,000. And the court, in incredible leniency, particularly in light of the, you know, respondents' inaccurate representations over months that they had, in fact, complied, rather than impose those fines, the court awarded unions fees. The union sought fees around, I think, $200,000, and the court cut them by 50%. So, you know, the union was awarded, you know, a good amount of its fees, but certainly not everything that it had to expend on the litigation. And, you know, part of the reason it was so time consuming was because the union had to constantly collect and monitor payments to the benefit funds, pay stubs to employees. The employer, because the employer was so slow and often didn't produce payroll records, it was very time consuming to monitor whether or not the employer had complied. And particularly because the employer kept making representations that they had complied, the union had to obviously be very diligent to make sure that it figured out whether that was true or not, and, you know, submit very detailed records to the court. So, you know, the union did expend an extraordinary amount of effort litigating this case for many, many months in order to drag the employer finally into compliance. I did want to just clarify that the court did not acknowledge any vagueness in its order. In light of the employer's claim of possible ambiguity, the court in its January order explicitly said it did not consider its order to be vague at all, but to avoid any claims, it, you know, clarified it in January. The court, I'm sorry. But it stayed part of its order, the court did, didn't it? The court in its May order stayed the party's dispute over the wage rate for three employees. And it's worth noting that that dispute had nothing to do with the contempt finding, because the court found that the employer had substantially complied in May, despite the fact that it had not addressed the wage rate for three individuals. The employer has not articulated a reason why it disputes the union's position on the wage rate owed to these three employees, nor does, is there any contract interpretation required to determine the wage rate to which they're entitled. The parties both agree, and it was repeatedly stated in court, employees are owed 1061 an hour, if they're hired before a certain date, they're owed an additional 2%, and before another date, an additional 2%. It's just math. The parties don't agree, disagree on the dates of hire for these individuals. But the court did, again, I think, in great leniency, say that it would allow the employers a chance to argue why the wage rate, you know, stated by the union wasn't accurate. The court did not agree that there was any vagueness. They just, he said, let me hear from you. In their appeal, the employers didn't articulate any basis for why they disagree with the wage rate owed to those three individuals. You know, it's a manufactured dispute, but it does not deny any ambiguity in the court's order. The collective bargaining agreement is very clear on the wage rates owed to employees. It's based on their date of hire. And in any event, the court's contempt finding didn't turn on the employer's failure to pay these three employees the wage rates that they're owed. It turned on their failure to correct the wage rates for everybody else and make benefit from payments over nine months from when the court's order issued until May of 2019. So the order before us would lift the stay and grant the sanctions. Is that correct? The stay has been denied. Oh, I'm sorry. Yes, that's right. You, I'm sorry. You're saying if the court were to. If the court were to affirm Judge Rakoff's last order. Yes. Yes, Your Honor. That's right. It would confirm the sanctions and it would, you know, uphold. That's correct. Yes. Okay. Thank you. Any other questions? No, thank you. No, okay. If not, Ms. Hanson, thank you. We'll hear from you in three minutes. Judge, I'll be fairly brief. Ms. Hanson refers to that there was no question as far as these no issue concerning it. And I think that she referred to it as a fiction. There indeed are two separate employers in this matter. And there is indeed a collective bargaining or the right to contract negotiations with Atrium separate and apart from Hamilton Park. So the suggestion that there's a fiction here with regards to Hamilton Park and Atrium clearly begs the issue, begs the facts in this proceeding. And Judge Rakoff in his decision indeed stayed his order for three employees. That by itself from our perspective recognized that there was an uncertainty, that there was a vagueness that would clearly from our perspective warrant that there be no contempt proceeding in this matter and no attorney sees. I can continue to go on. If any of the judges in the panel have any questions, I'll be glad to answer them. Those are the two points that I wanted to just highlight. And otherwise, I would be repeating myself in my initial presentation to the court. Thank you, counsel. I have no questions. Hearing none from the other panel, we'll thank you for your appearance. Thank you. Thank you very much. And we'll reserve decision on this.